# Levin, Appellant, *v*. McClaskey.

*Equity—Receivers—Levy on property in receiver's hands—Set-
ting aside levy.*

A corporation owning a factory, on which there was a mortgage,
was placed in the hands of a receiver.  In the factory building,
and attached to the real estate were certain machinery and equip-
ment which had been purchased by a third person for the corpo-
ration and turned over by him to the company with knowledge
that the plant was covered by a mortgage and that the machinery
and equipment were to be affixed to the real estate.  A judgment
creditor of such third person levied upon such machinery and
equipment as the property of the party who had purchased it for
the corporation.  Upon petition of the receiver, the levy was set
aside.  *Held,* no error.

Argued January 14, 1916.    Appeal, No. 13, Oct. T., 1915, by plaintiff, from order of C. P. Washington Co., August T., 1913, Execution Docket, Nos. 85 and 86, setting aside a levy in case of Julius Levin v. F. J. McClaskey and A. G. Smith.    Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ.    Affirmed.

Petition to set aside a levy.

The facts appear in the following opinion by McILVAINE, P. J.

Some time in the year 1912 the Standard Sheet Metal Manufacturing Company, a corporation, built and equipped a plant on a lot in Canton Township near the Borough of Washington, to manufacture certain articles from iron and steel.    The company, to obtain money from the banks of Washington, entered into an agreement with certain citizens of Washington, A. M. Linn, James I. Brownson and J. D. Bigger, Esqs., acting as their trustees, in which the said corporation bound itself in the sum of $25,000.00 to indemnify these citizens from any loss that they might sustain by reason of the fact that they had become or might become endorsers for the company on notes upon which money had been borrowed or which might be borrowed for the company's use, and on the 24th day of July, 1912, they gave a mortgage on the lot on which this plant was being erected to secure to said citizens or their trustees a faithful compliance with the said agreement, which mortgage was duly recorded on the 27th day of July, 1912, in the recorder's office and became a lien upon said lot and all buildings and fixtures that might then be and thereafter be erected thereupon.

On the 19th day of February, 1914, on account of its insolvency, J. Winfield Reed, the petitioner, was appointed receiver of the Standard Sheet Metal Manufacturing Company, and having given bond took possession of the company's property including the lot and plant

that was built and being operated upon said lot covered by said mortgage.

Some time in the last of June, 1913, Julius Levin, who was plaintiff in two judgments entered respectively to Nos. 158 and 159, August Term, 1913, against A. G. Smith and F. J. McClaskey, issued writs of fi. fa. upon said judgments and placed them in the hands of the sheriff. On July 1, 1913, the sheriff made return upon said writs as follows:

"And now, July 1, 1913, levy made as follows: Machinery used in and found in building occupied by Standard Sheet Metal Manufacturing Company, Tylerdale, Washington County, Pennsylvania, as property of within named A. G. Smith, one of the defendants, to wit: Three power brakes, two power presses, two hand brakes, two sets power rolls, two sets shears, punch, two tool presses, emery grinder, pumper, crimper, planer, scroll shears, square shears, lot small tools, etc., etc., etc., and all other property of said defendant."

The Standard Sheet Metal Manufacturing Company gave notice to the sheriff that the property levied upon belonged to them and not to A. G. Smith. The sheriff had the property appraised as provided by law, and the appraisement amounted to $9,100.00, and thereupon presented his petition with said appraisement to the court and asked for a rule on the Standard Sheet Metal Manufacturing Company to show cause why an issue would not be framed to determine the ownership of said property, and gave notice of said rule to the defendants in the judgments, being A. G. Smith and F. J. McClaskey. To this rule the Standard Sheet Metal Manufacturing Company filed an answer setting forth that the machinery that had been levied upon had been bought by them from F. J. McClaskey and A. H. Anderson and had been afterwards installed as part of the company's plant, and that it has ever since been and now is part of said plant and is machinery that is necessary to the successful operation of said plant.

A. G. Smith, one of the defendants in said judgment, filed an answer and claimed that the property levied upon belonged to him.

No disposition was ever made of this rule to interplead, neither of the parties concerned having called it up in due course to the end that the court might frame an issue to determine the question of the ownership of the property levied upon.

On April 1, 1914, some few weeks after J. Winfield Reed was appointed receiver of said manufacturing company, he presented the petition for the rule that is now before us, asking that the writs of fi. fa. be set aside for the reason that the property levied upon was real estate and part of the plant covered by the mortgage in favor of James I. Brownson, A. M. Linn and J. D. Bigger, trustees.

To this rule Julius Levin, the plaintiff in the execution, filed an answer admitting the fact that J. Winfield Reed was receiver of the Standard Sheet Metal Manufacturing Company and the right of this court to protect his rights in the premises. It was also admitted that it was true that the receiver had taken possession of the property and assets of the Standard Sheet Metal Manufacturing Company, consisting principally of a tract of land in Canton Township, said county, upon which there is erected a sheet metal plant filled up with certain machinery, and that the machinery used therein is the machinery levied upon as the property of A. G. Smith by virtue of the writs of execution and embraced in the sheriff's return above quoted. The plaintiff in said execution in his answer, however, denied that any of said machinery belongs or ever did belong to the Standard Sheet Metal Manufacturing Company, or that it has been in lawful possession or use of the same; but affirms that the machinery always has and still belongs to A. G. Smith. To this answer a replication was filed and testimony was taken, and upon that testimony we are now to dispose of the questions that are properly before the court.

If no receiver had been appointed and the Standard Sheet Metal Manufacturing Company was still solvent and doing business, the questions in controversy would properly be disposed of under the sheriff's rule to interplead. But the parties to that rule not having proceeded thereunder prior to the time that a receiver was appointed and this court having taking into its hands through the agency of a receiver the property of the Standard Sheet Metal Manufacturing Company, "that rule to interplead is superseded and the questions involved therein are now transferred to the proceeding started by the receiver when he asks for the rule that is now before us," and we now dispose in equity of the questions which might have been disposed of between the original parties in an issue framed and to be tried by a jury.

### FACTS FOUND.

The Standard Sheet Metal Manufacturing Company, or those who were first promoting it before it was incorporated, were induced by the board of trade of Washington to locate their plant in Washington, and as an inducement for them to do so agreed that they would furnish endorsers for the company to enable them to get working capital from the banks of our town; and to protect these endorsers the mortgage hereinbefore referred to was executed. It was the purpose of the parties to equip the plant which was to be erected in Washington by the transporting of machinery which had been in a similar plant on the Northside, Pittsburgh, but which had been dismantled. "This machinery was purchased by A. G. Smith, A. H. Anderson and F. J. McClaskey acting conjointly. Who was the real vendee of the property and took the title is disputed. But it is a fact that whoever of the three became the real owner of this property, they all knew that the property was to be turned over to the Standard Sheet Metal Manufacturing Company and was to be installed into the plant where it

was found when levied upon," and they all knew it was to be so installed as to become part of the plant and part of the realty, and they all knew of the existence of the mortgage, or at least had constructive notice of it, because the mortgage was recorded before all the property was installed and the plant put in full operation.

The court further finds that the Standard Sheet Metal Manufacturing Company did not take possession of this property and make it part of their plant and part of their realty covered by this mortgage, either clandestinely, unlawfully or without the knowledge of A. G. Smith. He knew that the machinery was being delivered to become part of the plant; he knew it was being installed and made part of the plant; and he knew that the ground upon which the plant was being erected was covered by a mortgage.

CONCLUSIONS OF LAW.

From these facts we are clearly of the opinion that this property cannot be levied upon by the sheriff on the executions issued by Julius Levin, and that the levy made upon these executions should be set aside. What the relations were between A. G. Smith, A. H. Anderson and F. J. McClaskey and who may have held the title to this property, in our opinion is immaterial in this case; and whether or not A. G. Smith has any claim against the Standard Sheet Metal Manufacturing Company for the price or any part of the price of the machinery that was placed in the plant, is a question that is also immaterial in this proceeding and is not passed upon. All that we decide is that Julius Levin cannot on an execution issued on a judgment which he holds against A. G. Smith and F. J. McClaskey sell machinery which belonged to the Standard Sheet Metal Manufacturing Company and is now in the hands of a receiver who is the agent and representative of this court; and that we cannot in this proceeding pass upon the question of whether or not A. G

Smith was the owner of the property placed in the plant when it was placed there, and whether or not the company owes him any money. By allowing the property to be delivered to the Standard Sheet Metal Manufacturing Company with the knowledge that they were to attach it to the real estate and to make it a part of a plant covered by a mortgage which secured an agreement that provided on its face that that mortgage should be a lien prior to all other liens prevents Levin, Smith's creditor, after the property has gone into the hands of the court for the benefit of the creditors of the insolvent concern, from detaching the personal property from the real estate and selling it to pay a debt which A. G. Smith may owe to him. He will have to work out his rights to any interest that A. G. Smith may have as a creditor of the Standard Sheet Metal Manufacturing Company in some other way. Smith could not deliver this property, put it in the full possession of the Standard Sheet Metal Manufacturing Company, and then against its creditors claim that he retained the title thereto. Delivery under such circumstances passed the title, at least as far as the creditors of the Standard Sheet Metal Manufacturing Company are concerned, and especially would this be so as to creditors who had a lien thereon by operation of a mortgage which was duly recorded and of which he had knowledge.

The plaintiff filed exceptions to the findings and decree of the court, which exceptions were subsequently dismissed. Plaintiff appealed.

*Errors assigned* were in dismissing plaintiff's exceptions.·

*Saul Schein,* with him *John H. Mudoch, Harry M. Stein* and *John C. Bane,* for appellant.

*Rufus S. Marriner,* with him *James A. Wiley,* of *Wiley & Marriner,* for appellee.

Per Curiam, March 6, 1916:

This decree is affirmed at appellant's costs, on the opinion of the learned president judge of the court below, in pursuance of which it was entered.